UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEKSANDR TKACHEV,<br>Petitioner,<br>v.<br>WARDEN OF CENTRAL VALLEY ANNEX,<br>Respondent. | Case No. 1:26-cv-04039-JLT-HBK (HC)<br>FINDINGS AND RECOMMENDATIONS TO GRANT IN PART PETITION FOR WRIT OF HABEAS CORPUS[1]<br>(Doc. 1)<br>FIVE-DAY OBJECTION PERIOD |

Petitioner Aleksandr Tkachev, an immigration detainee in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the Central Valley Annex in McFarland, California, filed this counseled petition for writ of habeas corpus under 28 U.S.C. § 2241 on May 26, 2026. (Doc. 1, "Petition"). The Petition asserts three grounds for relief: (1) revocation of Petitioner's parole and continued detention without notice of the reasons or an opportunity to be heard violated the Fifth Amendment's Due Process Clause ; (2) continued detention violates 8 U.S.C. § 1231(a)(6); and (3) continued detention violates the Administrative Procedure Act ("APA"). (*Id*. at 12-19). Petitioner seeks, *inter alia*, immediate release. (*Id*. at 19).

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2025).

Respondents contend that the Court should deny the Petition because Petitioner's in absentia removal order became final upon entry under C.F.R. § 1241.1(e), and his detention falls within the presumptively reasonable six-month period under 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 5). Respondents also argue Petitioner has not shown there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner replies that detention under § 1231(a)(6) remains subject to constitutional limits, and that Respondents have not shown that removal is significantly likely in the reasonably foreseeable future. (Doc. 6).

In response to the Court's August 4, 2026 order directing the parties to clarify the status of any removal proceedings and the statutory basis for Petitioner's detention, Petitioner notified the Court that he timely appealed of the Immigration Judge's ("IJ") denial of his motion to reopen the in absentia proceedings to the Board of Immigration Appeals ("BIA"). (Docs. 7, 8). Petitioner therefore contends that his removal order is not final. (Doc. 8 at 2). Respondents acknowledge that the BIA appeal is pending but maintains that Petitioner remains subject to a final removal order and is detained under 8 U.S.C. § 1231 because the BIA he has not been granted a stay of removal. (Doc. 9). Petitioner replies that the absence of an automatic administrative stay does not foreclose his argument that, even assuming his is detained under § 1231(a)(6), he remains entitled to constitutional protection against prolonged, arbitrary civil detention. (Doc. 10).

For the reasons below, the undersigned recommends that the district court grant the Petition in part on Petitioner's procedural due process claim (claim one).[2]

## I. BACKGROUND

Petitioner is a citizen of Russia and a native of Belarus. (Doc. 1 at 2). On or about May 9, 2023, he was encountered at a port of entry. (Doc. 5-1 at 2). On the same day, Petitioner was issued a Notice to Appear ("NTA") charging him as subject to removal under 8 U.S.C. § 1182(a)(7)(i)(I) (no valid entry document), and he was released on parole. (Doc. 1-2; Doc. 5-1 at 2).

On November 20, 2025, an IJ ordered Petitioner removed from the United States in

[2] In light of the Court's conclusion that Petitioner's re-detention violates his procedural due process rights under the Fifth Amendment, the Court declines to address Petitioner's additional claims for relief.

absentia. (Doc. 5-2). On March 10, 2026, Petitioner reported to ICE for a routine check-in, was informed of the order of removal in absentia, and was detained by ICE. (Doc. 1 at 3; Doc. 5-1 at 2). On or about April 7, 2026, Petitioner filed a motion to reopen IJ jurisdiction. (Doc. 1 at 3, Doc. 1-4). The IJ denied the motion on May 30, 2026. (Doc. 5-3). Petitioner appealed the denial with the BIA, which remains pending. (*See generally* Docs. 8, 9).

At the time the Petition was filed, Petitioner was detained in ICE custody at the Central Valley Annex Detention Center. (Doc. 1).

## II. APPLICABLE LAW AND ANALYSIS

A district court may grant habeas relief to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). District courts retain jurisdiction over habeas challenges to immigration detention that are "sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

### A. Statutory and Legal Framework

#### 1. Mandatory Detention under 8 U.S.C. § 1231

Detention, release, and removal of noncitizens subject to a final order of removal are governed by 8 U.S.C. § 1231. Under § 1231(a), when an alien is ordered removed, the Attorney General "shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period') …. [and] [i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(1), (3). Section 1231(a)(6) permits continued detention beyond the removal period of certain inadmissible or criminal aliens, or those determined to be a risk to the community or unlikely to comply with the removal order, and provides that if released, such individuals "shall be subject to the terms of supervision in paragraph (3)." § 1231(a)(6). Pursuant to these mandates, regulations at 8 C.F.R. § 241.13 and § 241.4 govern release on supervision, and revocation of such release.

Title 8 C.F.R. § 241.13 reflects the Supreme Court's decision in *Zadvydas v. Davis*, 533

U.S. 678 (2001). *Zadvydas* addressed prolonged detention under § 1231(a)(6) where removal could not be effectuated because designated countries refused to accept the noncitizens or there was no applicable repatriation treaty. *Prieto-Romero*, 534 F.3d at 1062 (citing *Zadvydas*, 533 U.S. at 684-86). The Court held that detention under § 1231(a)(6) is presumptively reasonable for six months, after which a noncitizen is entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S at 701. Consistent with *Zadvydas*, § 241.13(i) permits revocation of release if the alien violates the conditions of their release, or "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." § 241.13(i) (1)-(2).

2. Discretionary Detention under 8 U.S.C. § 1226(a)[3]

Section 1226(a) authorizes arrest and detention of an alien pending a decision on removal, and grants the government broad discretion to continue detention or release the alien on bond or conditional parole. § 1226(a); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). Federal regulations provide that noncitizens detained under § 1226(a) receive bond hearings at the outset of detention and must show by a preponderance of the evidence that they are not a danger to the community or a flight risk. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); Matter *of Guerra*, 24 I.& N. Dec. 37, 40 (B.I.A. 2006); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007).

After discretionary release under § 1226(a), the government may revoke bond or conditional parole and rearrest the noncitizen "at any time," but courts have held that rearrest must comply with constitutional constraints and generally requires a change in circumstances. *M.R.R. v. Chestnut*, 2025 WL 3265446, at *3 (E.D. Cal. Nov. 24, 2025) (internal citations

[3] Section 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Jennings*, 583 U.S. at 289 (emphasis in original). In January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add a new category of alien ineligible for release under § 1226(a), including aliens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes. LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

omitted); *Martinez Hernandez v. Andrews*, 2025 WL 2495756, at *10 (E.D. Cal. Aug. 28, 2025) (while allowing for rearrest at any time, "this does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

B. Due Process

The Fifth Amendment's Due Process Clause protects "persons" within the United States, including noncitizens, from deprivation of liberty without due process of law. *Trump v. J.G.G.*, 604 U.S. 670 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 305 (1993)*; Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). The scope of protection varies by immigration status and circumstance. *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

Once noncitizens enter the country, even unlawfully, they are entitled to due process protections, and the Due Process Clause generally requires some form of hearing before the government deprives a person of liberty. *Id.*; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'*"); see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

C. Analysis

1. Statutory Authority

§ 1231 governs detention only after a removal order become final. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) ("Once an alien has a final removal order that is not subject to a judicial stay, detention authority shifts to 8 U.S.C. § 1231(a)."). It does not govern detention while administrative or judicial proceedings remain pending; instead, it governs the removal period that follows the conclusion of removal proceedings. *Avilez v. Garland*, 69 F.4th 525, 530-31 (9th Cir. 2023); § 1231(a)(1)(A). The removal period begins on the latest of (1) the date the order of removal becomes administratively final, (2) if the removal order is judicially reviewed and the court orders a stay of removal, the date of the court's final order, or (3) the date

a noncitizen is released from criminal detention or confinement. § 1231(a)(1)(B).

Although, an in absentia removal order ordinarily becomes final upon entry under 8 C.F.R. § 1241.1(e), the Ninth Circuit has held that an in absentia order becomes final upon the earlier of (1) the 180-day period to file a motion to reopen expires, or (2) when the BIA affirms the order. *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021) ("Because in absentia removal orders may not be appealed to the BIA without first filing a motion to reopen the order before the IJ within 180 days of the order, 8 U.S.C. § 1229(a)(b)(5)(C)(i) … if the petitioner does *not* timely file such a motion before the IJ, the order becomes final at the end of the 180-day period.").

Petitioner's in absentia was entered on November 20, 2025. (Doc. 5-2). On or about April 7, 2026, Petitioner filed a motion to reopen his removal proceedings. (Doc. 1 at 9; Doc. 1-4). The IJ denied the motion, but Petitioner timely appealed that denial to the BIA, where the appeal remains pending. (Doc. 5-3; Docs. 8, 9). Accordingly, the in absentia removal order is not administratively final, and § 1231(a) does not govern Petitioner's detention. *See Li v. Albarran*, 2026 WL 970529, at *4 (E.D. Cal. Apr. 10, 2026) (in absentia removal order not final while appeal of IJ denial of timely motion to reopen removal proceedings is pending); *Bonilla v. Hermosillo*, 2025 WL 3237854, at *3 (W.D. Wash. Nov. 19, 2025) (same); *Cf. L.M.P. v. Chestnut*, 2026 WL 1906293, at *2 (E.D. Cal. July 2, 2026) (in absentia removal order became final because motion to reopen was not filed within 180 days, therefore two subsections of § 1231 potentially applied).

In supplemental briefing, Respondents argue Petitioner's appeal of an IJ order denying a motion to reopen after the entry of in absentia removal order does not automatically stay his removal, and he has not been granted a stay of removal by the BIA. (Doc. 9). This argument is unavailing. As squarely addressed in this district,

> A collateral challenge to a removal order, such as a motion to reopen proceedings, generally does not prevent the removal period from beginning. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 n. 6 (9th Cir. 2008) ("[T]he entry of a stay of removal for any other reason—for example, a stay entered while a court reviews an alien's § 2241 habeas petition or petition for review of the BIA's denial of a motion to reopen—does not prevent the removal period from beginning."). However, motions to reopen removal proceedings when the removal order was entered *in absentia* are not treated as

> collateral challenges to the removal order, but rather as part of the process required in order to challenge the removal order itself.

*Li*, 2026 WL 970529, at *3 (citing *Cui*, 13 F.4th at 991).

Petitioner therefore is detained under § 1226(a), which governs discretionary detention during pending removal proceedings. *See, e.g., Hernandez-Diaz v. Current or Acting Sec'y, United States Dep't of Homeland Sec*., 2026 WL 1991574, at *1 (E.D. Cal. July 9, 2026); *Li*, 2026 WL 970529, at 3 (citing *Cui*, 13 F4th at 996).

2. Due Process

While he does not cite the correct detention authority, Petitioner claims the revocation of his parole and subsequent detention without a pre-deprivation period violated his due process rights under the Fifth Amendment. (Doc. 1 at 12-15). Respondents do not substantively address his due process argument.

Procedural due process requires the Court to determine: (1) whether a protected liberty interest exists; and if so, (2) what process is due. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Garcia v. Andrews*, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

It is undisputed that Petitioner was apprehended upon entering the country and subsequently released on parole, and then re-detained four months after the in absentia removal order was entered. (*See* Doc. 1 at 2; Doc. 5-1 at 2). ICE initially has discretion under § 1226(a) to detain or release a noncitizen and may release the person if satisfied that release would not pose a danger or flight risk. *Rodriguez Diaz*, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *Espinoza v. Kaiser*, 2025 WL 2675785, at *6 (E.D. Cal. Sept. 18, 2025) (noting a person on conditional parole is generally released on their own recognizance subject to certain conditions such as reporting requirements).

Thus, when ICE initially has discretion to detain or release a noncitizen pending removal

proceedings, and chooses release, that individual has a protected liberty interest in remaining out of custody. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025). Here, Respondents do not argue Petitioner violated his conditions of release or the law, and the Court finds his initial release and time in the community created a protected liberty interest in continued release following conditional parole. *See Solano v. Robbins*, 2025 WL 3718831, at *6 (E.D. Cal. Dec. 23, 2025) (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1033.

To determine what process is due, courts apply the three-factor balancing test outlined in *Mathews v. Eldridge*:[4] 424 U.S. 319, 335 (1976). First, the Court considers "the private interest that will be affected by the official action." *Id*. Petitioner's interest in remaining free from detention and maintaining community ties is substantial. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects."); *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (recognizing it is "beyond dispute" that the "private interest at issue here is 'fundamental'"); *see also Pinchi*, 792 F. Supp. 3d at 1033. Petitioner's private interest is heavily affected, and this factor weighs in favor of Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such an interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Because Petitioner received no pre-deprivation custody redetermination hearing, the risk of erroneous deprivation is high, and the value of a hearing before a neutral decisionmaker is significant, particularly where Respondents do not argue that he is a flight risk or danger or that he failed to appear timely and consistently for immigration court hearings. *See A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the Court considers the government's interest, "including the function involved and

---

[4] The Ninth Circuit has noted that the Supreme Court "when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz*, 53 F.4th at 1206-07. However, in light of the consistent employment of *Mathews* by district courts in the Ninth Circuit in determining whether due process applies in the context of re-detention of previously paroled noncitizens, the Court proceeds to apply those factors while still reserving judgment on whether *Mathews* is an "all embracing test" when encountering due process challenges by immigrant detainees. *See A.E. v. Andrews*, 2025 WL 1424382, at *4 (citing *Dusenbury v. United States*, 534 U.S. 161, 168 (2002) ("we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims.").

the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews*, 424 U.S. at 334. Unquestionably, the government has a significant national interest in enforcing its immigration laws. Indeed, it is a sovereign's fundamental right to control its borders, to protect national security, and ensure integrity in its immigration system. However, Respondents do not explain how Petitioner threatens these interests or how the government's interest is weakened by affording him a hearing before a neutral decisionmaker. Nor do Respondents offer evidence of how affording a hearing results in either a fiscal or administrative burden, which has been found to be "minimal" by other courts. *See J.A.E.M. v. Wofford*, 2025 WL 3013377, at *7 (E.D. Cal. Oct. 27, 2025) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("In immigration court, custody hearings are routine and impose a 'minimal' cost.").

On this record, the *Mathews* factors weigh in Petitioner's favor, and the Court concludes his re-detention without a hearing violated his procedural due process rights.

D. Conclusion and Remedy

Because no Immigration Judge or immigration official has determined whether revocation of Petitioner's parole was proper om light of the in absentia removal order, the undersigned recommends that the Court order Respondents to provide a prompt, post-deprivation hearing under § 1226(a).

Consistent with decisions of other courts in this circuit, the government should bear the burden at that hearing of proving by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. *Yosseline P.G. v. Noem*, 2026 WL 183732, at *5 (E.D. Cal. Jan. 23, 2026) (collecting cases); *J.E.H.G. v. Chestnut*, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) (noting immigrant's initial release reflected government's determination that the noncitizen is not a danger to the community or a flight risk, and that because the government initiated re-detention, it should bear the burden of justifying re-detention.).

Accordingly, IT IS RECOMMENDED:

1. The Petition for Writ of Habeas Corpus (Doc. 1) be GRANTED in part as follows:

   a. Respondents be directed to provide Petitioner a substantive bond hearing under

8 U.S.C. § 1226(a), at which an Immigration Judge shall determine whether Petitioner poses a danger to the community or flight risk if released.

b. At the hearing, the government shall bear the burden of establishing by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.

2. If Petitioner is released, Respondents shall be permanently enjoined from rearresting or re-detaining him without compliance with constitutional protections, including at a minimum, (a) at least seven days' pre-deprivation notice, and (b) a pre-deprivation hearing at which the government bears the burden of showing by clear and convincing evidence that Petitioner is likely to flee or pose a danger to the community if not arrested.

3. If legally sufficient circumstances justify arrest without advance notice, Respondents shall provide a post-deprivation hearing consistent with the requirements described above within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and receives notice of that order, Respondents may detain him solely to execute removal but shall provide a bond hearing within the time required by law.

4. This case be CLOSED.

**NOTICE OF EXPEDITED OBJECTIONS**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Given the recommendation to grant the petition in part, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.** *Id.*; Local Rule 304(b) (permitting court to set a different time). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the

waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated: September 10, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE